# CRIMINAL COMPLAINT

| United States District Court | DISTRICT<br>Eastern District of Pennsylvania |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>ALEXANDRE ASTAKHOV | DOCKET NO.<br>12 - 1321 - m |
| | MAGISTRATE'S CASE NO. |

Complaint for a violation of Title 18, United States Code, Section 371

| NAME OF JUDGE OR MAGISTRATE<br>Honorable ELIZABETH T. HEY | OFFICIAL TITLE<br>U.S. Magistrate Judge | LOCATION<br>Philadelphia, PA |
|---|---|---|
| DATE OF OFFENSE<br>September 11, 2012 | PLACE OF OFFENSE<br>Philadelphia, PA | ADDRESS OF ACCUSED:<br>6301 23rd Avenue, Apt 5F<br>Brooklyn, NY |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Conspiracy to commit an offense against the United States, that is, to willfully export and cause to be exported from the United States to Russia defense articles, including but not limited to L-3 Clip On Night Vision Device-Thermals (CNVD-T) and L-3 mini thermal monoculars, without first obtaining from the Department of State a license or written authorization for such export.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

**SEE ATTACHED AFFIDAVIT**

MATERIAL WITNESSES IN RELATION AGAINST THE ACCUSED:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT (official title)<br>ALEXANDER E. ZUCHMAN |
|---|---|
| | OFFICIAL TITLE:<br>SPECIAL AGENT<br>DEPARTMENT OF HOMELAND SECURITY |

Sworn to before me and subscribed in my presence.

SIGNATURE OF MAGISTRATE
Honorable ELIZABETH T. HEY, US Magistrate Judge

DATE 9/12/12

AFFIDAVIT

I, Alex E. Zuchman, being duly sworn, state as follows:

1. I am a Special Agent of the Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been employed as Special Agent since 2004. Prior to my employment as a Special Agent, I served as a United States Marine Corps Ground Intelligence Officer. I am currently assigned to the Counter Proliferation Investigation group in Philadelphia and am authorized to investigate violations of federal laws and execute search and arrest warrants.

2. I am the case agent assigned to this investigation. This affidavit is based on, among other things, my training and experience in conducting criminal investigations, my personal knowledge, review of documents, public records, and other evidence, and conversations with other law enforcement agents and officers, including other experienced HSI agents and law enforcement officers with whom I work. I have included every fact I have learned during the investigation but only sufficient facts to establish probable cause to arrest defendant Alexandre ASTAKHOV for conspiring to illegally export defense articles without a license in violation of the Arms Export Control Act.

3. In furtherance of the security and foreign policy of the United States, the United States regulates and restricts the export of arms, munitions, and implements of war, i.e., defense articles, pursuant to the Arms Export Control Act ("AECA"), 22 U.S.C. 2778. The regulations which govern such exports are entitled the International Traffic in

1

Arms Regulations ("ITAR"), 22 C.F.R. §§ 120-30. The ITAR contains a list of defense articles and defense services which are subject to control by these regulations, which list called the United States Munitions List ("USML"), 22 C.F.R. § 121.1. No defense article or defense service may be exported or otherwise transferred from the United States to a foreign country without first obtaining a license or written approval from the Department of State, Directorate of Defense Controls.

4. Based on the evidence obtained in the investigation thus far, I have probable cause to believe that, beginning on or about June 7, 2012, in the Eastern District of Pennsylvania, and elsewhere, Alexandre ASTAKHOV knowingly and willfully conspired to illegally export several thermal imaging defense articles, to include, two L-3 Clip On Night Vision Device-Thermals (CNVD-T), three L-3 mini thermal monoculars (MTM), and one OASYS SkeetIR from the United States to Russia without first having obtained a license or written approval from the Department of State, Directorate of Trade Controls, in violation of 18 U.S.C.§ 371, 22 U.S.C. § 2778, and 22 C.F.R. §§ 121.1 and 127.1.

5. The investigation has disclosed that, from at least June 7, 2012 to the present, Alexandre ASTAKHOV and others have purchased a number of defense articles, to include military-grade night vision, and have exported the defense articles to Russia without first obtaining an export license.

6. Alexandre ASTAKHOV, a naturalized United States citizen from Russia, currently resides in Brooklyn, New York. Based on Department of Labor wages,

2

ASTAKHOV has no known source of income, but previously served as a Navy corpsman and is currently in the Naval Individual Ready Reserve (IRR).

7. In the spring of 2012, a mutual business associate introduced ASTAKHOV to a Cooperating Defendant (hereinafter "CD #1"), posing as dealer of military-grade night vision devices. ASTAKHOV told CD#1 that he wanted to purchase export-restricted night vision devices in exchange for cash.

8. On June 7, 2012, CD #1 and ASTAKHOV met in the Eastern District of Pennsylvania to discuss a cash sale of night vision equipment. This meeting was consensually monitored and recorded by law enforcement agents.

   a. At the beginning of this recorded conversation, which has been translated and transcribed from Russian, CD #1 told ASTAKHOV that he only wanted to conduct large transactions. CD #1 further told ASTAKHOV that he did not care where ASTAKHOV was sending the export-restricted night vision devices. CD #1 stated that his only concern was that he did not want to get "framed". CD #1 then asked ASTAKHOV if he would sign export compliance forms in which ASTAKHOV would certify that ASTAKHOV was aware that the items which CD #1 sold to him could not be exported without a proper license. ASTAKHOV replied that he would not sign such a form, stating, "No, we don't work like that. We won't be signing papers."

   b. Later in the conversation, CD #1 asked ASTAKHOV what he intended to do with the devices. ASTAKHOV cryptically suggested that his role in the conspiracy was to purchase the export-restricted devices by stating, "Let's just say I only

deal with you, the rest doesn't involve me." ASTAKHOV explained, "In other words, try to cover our asses too".

   c. CD #1 and ASTAKHOV then discussed the manner in which the devices would be exported. CD #1 asked ASTAKHOV to be careful and suggested that he remove the serial numbers from the export-restricted devices so they could not be traced back to CD #1. CD #1 stated that ASTAKHOV could remove the serial numbers or CD #1 could remove them for him prior to export. ASTAKHOV replied, "Whatever you prefer."

   9. On June 15, 2012, ASTAKHOV began to email CD #1 from a newly created email account, alex.alex822@yahoo.com. On July 24, 2012, an email search warrant signed in the Eastern District of Pennsylvania by the Honorable United States Magistrate Judge Carol Sandra Moore Wells was executed on this email account. The results from the email search warrant show that ASTAKHOV is exclusively using this email account to communicate with CD #1 about the cash purchase of night vision. A search of the internet protocol (IP) addresses used to access the account alex.alex822@yahoo.com also revealed that the account is being accessed by a user in Russia. Your affiant believes that the end user of the night vision in Russia is accessing this newly formed email account after ASTAKHOV provided him or her with his username and password.

   10. On July 19, 2012, ASTAKHOV and CD #1 again met in the Eastern District of Pennsylvania to discuss the cash sale of three mini thermal monoculars

4

two CNVD-Ts, and one SkeetIR, all of which are on the USML and required a license to export. This meeting was consensually monitored and recorded by law enforcement and has been translated and transcribed from Russian. During that meeting, CD #1 asked ASTAKHOV what precautions he was taking to ensure that he would not get caught exporting the night vision devices. ASTAKHOV replied, "You know I can't tell [you] all of this." ASTAKHOV explained, "I understand that you don't want to put yourself on spot but understand that I have no reason to put my ass on the spot either. I mean, I can't tell you how, how it all works." CD #1 implored ASTAKHOV to be careful and understand the consequences of engaging in this conduct. ASTAKHOV replied, "I know what it is about."

11. On August 2, 2012, CD #1 placed a recorded phone call to ASTAKHOV to discuss their relationship and to ensure that when ASTAKHOV exported the devices CD #1 has sold him, that ASTAKHOV will not get caught. CD #1 reminded ASTAKHOV that illegally exporting these devices is "punishable with jail" and that "this is not a joke and these are not toys." CD #1 further stated, "I want to be sure that the devices that you buy from me that they will leave the country safely, that they won't be held up somewhere like on the border, and that no one will trace them back to me, understand?" ASTAKHOV replied, "Listen, if I don't tell you everything it doesn't mean that I don't know what I'm doing, right?"

12. On August 7, 2012, ASTAKHOV and CD #1 met in a parking lot in Mount Laurel, New Jersey. This meeting was consensually monitored and recorded by

enforcement agents. In this meeting, ASTAKHOV admitted that the items that were to be sold to him by CD #1 were going to be illegally exported to Russia. ASTAKHOV also admitted that he understood the penalty for this conduct is three years incarceration.

13. On September 6, 2012, CD #1 made arrangements with ASTAKHOV to meet him on September 11, 2012 in Philadelphia to sell him a portion of ASTAKHOV's order: two L-3 CNVD-Ts and one OASYS SkeetIR thermal weapon sight in exchange for $41,000. On September 10, 2012, ASTAKHOV told CD #1 that he needed an extra day to get the money together and they pushed the deal back one day. On September 12, 2012, CD #1 met with ASTAKHOV in the parking lot of a Home Depot store on Columbus Boulevard in Philadelphia. ASTAKHOV handed CD #1 approximately $41,000 in U.S. currency. CD #1 then handed ASTAKHOV two L-3 CNVD-Ts and one OASYS SkeetIR thermal weapon sight which ASTAKHOV intended to illegally export. After the exchange, law enforcement officers placed ASTAKHOV under arrest. 14. On June, 8, 2012, your Affiant checked with the pertinent authorities and confirmed that Alexandre ASTAKHOV has never applied for, nor received, an export license or written approval from the United States Department of State to legally export the three L-3 mini thermal monoculars (MTM), two L-3 CNVD-Ts, and one SkeetIR. 15. I have also been informed by the United States Department of State, Directorate of Defense Controls that the L-3 CNVD-T and the L-3 MTM are defense articles categories XII(c) on the United States Munitions List, respectively. Accordingly, both require a license to export.

Directorate of Defense Controls that the L-3 CNVD-T and the L-3 MTM are defense articles categories XII(c) on the United States Munitions List, respectively. Accordingly, both require a license to export.

16. Based on the forgoing, there is probable cause to believe that ASTAKHOV knowingly and willfully conspired to export defense articles from the United States to Russia without first obtaining an export license or written approval from the State Department, in violation of 18 U.S.C. § 371, 22 U.S.C. § 2778, and 22 C.F.R. §§ 121.1 and 127.1.

ALEXANDER E. ZUCHMAN
Special Agent, Homeland
Security Investigations

Subscribed and sworn before me
this 12th day of September, 2012

HON. ELIZABETH T. HEY
United States Magistrate Judge